UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Southern ~~WESTERN~~ DIVISION
NO. 7:18-CV-59-FL

FILED
APR 04 2018
PETER A. MOORE JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

NAPIER SANDFORD FULLER,

    Plaintiff,

v.

REBECCA W. HOLT,
RICHARD A. BADDOUR JR.,
JAMES C. STANFORD,
JAMES T. BRYAN, III,
SAMANTHA HYATT CABE,
CATHERINE C. STEVENS,
in their official capacities as employees of the
North Carolina Administrative
Office Of The Courts

    Defendants.

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
PER ADA TITLE II**

(Jury Trial Requested)

NOW COMES the Plaintiff, Napier Sandford Fuller, *pro se*, and alleges his complaint as follows:

## SUMMARY OF COMPLAINT

Mr. Fuller seeks declaratory/injunctive relief from this Federal Court so that he may continue to represent himself, *pro se*, in a minor misdemeanor charge of "harassing communications" that is in the pre-trial phase in the Orange County Superior Court. Mr. Fuller does not face the possibility of an active jail sentence, and has plead "not guilty." Mr. Fuller sought "reasonable accommodations" in recent court appearances, *pro se*, for a well documented mental disability covered under Title II of the Americans with Disabilities Act ("ADA"). The State never responded to Mr. Fuller's many written requests for "reasonable accommodations," but eventually appointed a Public Defender, *gratis*, after Mr. Fuller threatened federal litigation

Case 7:18-cv-00059-FL    Document 1    Filed 04/04/18    Page 1 of 18

to obtain the ADA accommodations by federal court order. Mr. Fuller refuses to be represented by the State's appointed counsel, and kindly asks this federal court for injunctive relief so that he may continue to be *pro se* in his defense. In short, Mr. Fuller asks this federal court to declare that his temporary status as a "criminal defendant" does not negate "reasonable accommodations" that the state has previously provided to him in the past to help ameliorate significant mental impairments.

## JURISDICTION AND VENUE

1. This action is authorized and instituted pursuant to Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132.

2. This action is authorized and instituted pursuant to Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794a.

3. This Court has jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331 (a federal question) §§ 1343 (civil rights) §§ 2201 (remedy).

4. Venue in this court is appropriate pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff, Napier Sandford Fuller, is a natural person, a U. S. citizen. He is a resident of the city of Wilmington in New Hanover County, North Carolina.

6. Defendant, Judge Rebecca W. Holt, is a natural person, a U. S. citizen. Defendant Holt is a Superior Court Judge of Orange County, an elected officeholder pursuant to the laws of North Carolina with a principal office located in the Town of Hillsborough in Orange County, North Carolina. Defendant Holt has been a member of the North Carolina State Bar, ID #14350, since 1987. Defendant Holt is employed by NCAOC pursuant to N.C.G.S. § 7A-40 and is therefore a recipient of federal financial assistance. Defendant Holt is sued in her official capacity as an

Orange County District Court Judge entrusted to provide ADA Title II accommodations so that persons with qualified disabilities may have full access to the state court system.

7.  Defendant, James C. Stanford, is a natural person, a U. S. citizen. Defendant Stanford is the Orange County Clerk of Superior Court, an elected officeholder pursuant to the laws of North Carolina with a principal office located in the Town of Hillsborough in Orange County, North Carolina. Defendant Stanford is listed as an "inactive" member of the North Carolina State Bar, ID #17599. Defendant Stanford is employed by NCAOC pursuant to N.C.G.S. § 7A-100 and is therefore a recipient of federal financial assistance. Defendant Stanford is sued in his official capacity as the Orange County Clerk of Superior Court entrusted to provide ADA Title II accommodations so that persons with qualified disabilities may have full access to the state court system.

8.  Defendant, Judge James T. Bryan III, is a natural person, a U. S. citizen. Defendant Bryan is an Orange County District Court Judge, an elected officeholder pursuant to the laws of North Carolina with a principal office located in the Town of Hillsborough in Orange County, North Carolina. Defendant Bryan has been a member of the North Carolina State Bar, ID #7635, since 1997. Defendant Bryan is employed by NCAOC pursuant to N.C.G.S. § 7A-102 and is therefore a recipient of federal financial assistance. Defendant Bryan is sued in his official capacity as an Orange County District Court Judge entrusted to provide ADA Title II accommodations so that persons with qualified disabilities may have full access to the state court system.

9.  Defendant, Judge Samantha Hyatt Cabe, is a natural person, a U. S. citizen. Defendant Cabe is an Orange County District Court Judge, an elected officeholder pursuant to the laws of North Carolina with a principal office located in the Town of Hillsborough in Orange County,

North Carolina. Defendant Cabe has been a member of the North Carolina State Bar, ID #28461, since 2002. Defendant Cabe is employed by NCAOC pursuant to N.C.G.S. § 7A-50 and is therefore a recipient of federal financial assistance. Defendant Cabe is sued in her official capacity as an Orange County District Court Judge entrusted to provide ADA Title II accommodations so that persons with qualified disabilities may have full access to the state court system.

10. Defendant, Judge Catherine C. Stevens, is a natural person, a U. S. citizen. Defendant Stevens is an "emergency judge" pursuant to the laws of North Carolina with a personal residence located in the Town of Chapel Hill in Orange County, North Carolina. Defendant Stevens is listed as an "inactive" member of the North Carolina State Bar, ID #7660. Defendant Stevens is employed by NCAOC pursuant to N.C.G.S. § 7A-50 and is therefore a recipient of federal financial assistance. Defendant Stevens is sued in her official capacity as an "emergency judge" entrusted to provide ADA Title II accommodations so that persons with qualified disabilities may have full access to the state court system.

11. Defendant, Judge Richard A. Baddour Jr., is a natural person, a U. S. citizen. Defendant Baddour is the resident Superior Court Judge of Orange County, an elected officeholder pursuant to the laws of North Carolina with a principal office located in the Town of Hillsborough in Orange County, North Carolina. Defendant Baddour has been a member of the North Carolina State Bar, ID #24101, since 1997. Defendant Baddour is employed by NCAOC pursuant to N.C.G.S. § 7A-40 and is therefore a recipient of federal financial assistance. Defendant Baddour is sued in his official capacity as an Orange County District Court Judge entrusted to provide ADA Title II accommodations so that persons with qualified disabilities may have full access to the state court system.

## STATEMENT OF FACTS: PLAINTIFF'S DISABILITIES

12. Plaintiff suffers from a clinically diagnosed psychiatric disability, Attention Deficit Hyperactivity Disorder, Combined Type, which involves both neurobiological and behavioral impairments ("the primary disability").

13. Plaintiff was formally diagnosed at the age of 16 with the primary disability on or about July 1, 1990 by a board certified psychiatrist in the City of Wilmington in accordance to the standards of the *American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders*.

14. The National Institute of Health contains a 2016 abstract the gives a detailed view of Plaintiff's primary disorder: "Studies spanning over 30 years have noted the highly impairing consequences of ADHD... Diagnosis [of ADHD] in childhood is associated with poor educational, occupational, economic, and social outcomes, as well as higher criminality in adulthood... The neurobiological symptoms include deficits in working memory, cognitive flexibility, and attention are similar to those observed in schizophrenia... Emotional dysregulation might confer risk for a host of negative occupational and social outcomes above and beyond the effect of inattentive and hyperactive and impulsive symptoms... Neuroimaging studies have implicated several large-scale neural circuits in ADHD with particular emphasis of [reduced function in] neural circuits related to sustained attention, inhibitory control, motivation, and emotional regulation... Emotional dysregulation might confer risk for a host of negative occupational and social outcomes above and beyond the effect of inattentive and hyperactive and impulsive symptoms: inhibitory control (including response inhibition and interference control) and reward processing."

15. Plaintiff suffers from a related disability ("the related disability") of severe migraine headaches with symptoms of intense pain, nausea, vomiting, dizziness, extreme sensitivity to light, visual auras and spacial disorientation.

16. The related disability is also treated in part by medication yet cannot be controlled; the onsets are rapid and unpredictable and typically require about 24 hours to fully recover.

17. The psychiatrist that made the diagnosis in 1990, recommended that Plaintiff receive "reasonable accommodations" under ADA regarding educational accommodations.

18. Plaintiff, then enrolled in a New Hanover County public school, an instrument of the State, has received "reasonable accommodations" per ADA that included extra time to read and write during examinations, quiet "chill out" rooms to avoid distraction, frequent breaks, and note-takers. With these accommodations in place, Plaintiff excelled academically and socially yet many problems remained.

19. The State of North Carolina provided Plaintiff's request for reasonable accommodations in taking the NC Real Estate Licensing Exam per ADA Title II.

20. The State of North Carolina also provided Plaintiff's request for reasonable accommodations in taking the NC General Contractor's Exam per ADA Title II.

## STATEMENT OF FACTS: ACCESS TO THE COURT

21. ADA Title II applies to every facet of the criminal justice system in the State of North Carolina.

22. Due process requires access to the courts of justice for all people.

23. When the criminal justice system fails to provide "reasonable accommodations" to the mentally impaired, typical encounters can often spiral out of control, leading to dangerous and

even lethal outcomes for Defendants in the criminal justice system who should be presumed "innocent" until proven guilty.

24. State actors in the criminal justice system often misperceive actions of the mentally impaired and treat them as uncooperative and have great discretionary ability to act harshly.

25. Extensive case law exists that shows all facets of the criminal justice system, from law enforcement to judges need to improve. Often state actors receive little training in how to recognize and respond to persons with severe mental impairments. This is especially true when it comes to elected judges who are often exempt from attending training as their authority derives from the electorate and not from the typical employment supervisory structure.

26. People with mentally disabilities are often unable to regulate their emotions when overwhelmed with the power of the police state in the courts via the bailiffs: guns, jail, police sirens, tasers, etc. Such emotional overload often creates disproportionate reaction: a desire to flee, to commit suicide, or have explosive fits of rage.

27. Persons with unseen mental disorders often face physical injury, death, and extreme emotional distress during routine encounters with the State's criminal justice system. Immunity of law enforcement of shields the State from the consequences of their actions – "probable cause" defenses are often invoked, successfully, when police shoot dead a person with mental disabilities.

28. For example, law enforcement may kill innocent people with cerebral palsy or austism in everyday encounters with little criminal consequences. Aside from a Section 1983 claims from the deceased family, a civil action, there are few consequences.

29. In summary, ADA Title II is not a means for those accused of crimes to "game the criminal justice system," but should be seen as an important tool to maintain a just system of law

7

in which all people may be treated equally before the law. Swift federal intervention is required when State judicial actors willfully ignore their ADA Title II responsibilities when it comes to the rights of accused.

30. Many civil rights organizations help people with mental disabilities by filing *amicus curiae* briefs on their behalf. These groups include: Disability Rights North Carolina, the American Civil Liberties Union, the American Association of People with Disabilities, the Disability Rights Advocates, the Disability Rights Educational Defense Fund, Inc.

31. Plaintiff seeks to be a *pro se* Defendant in a minor misdemeanor charge involving allegations of "hate speech" made by a prominent UNC LGBTQ activist, Lisa Zerden.

32. Two related criminal charges brought on February 2, 2017 have already terminated in Mr. Fuller's favor, acting *pro se* in rancorous District Court proceedings in which no ADA accommodations were offered despite many requests.

33. Plaintiff is now charged with just one count of the offense of "Harassing Communications," pursuant to N.C.G.S.A. §14-196.3(b)(2).

34. The arrest warrant, issued by UNC Police says, "I, the undersigned, find that there is probable cause to believe that on or about the date of offense shown and in the county named above the defendant named above unlawfully and willfully did REPEATEDLY EMAIL FACULTY AND STUDENTS OF THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL SCHOOL OF SOCIAL WORK FOR THE PURPOSE OF ANNOYING AND/OR EMBARRASSING THEM."

35. The controversial "anti-tranny hate speech" case is set for a jury trial on August 6, 2018 in Orange County Superior Court.

36. Plaintiff seeks to represent himself again, *pro se,* in future court appearances, but the court has refused to approve Plaintiff's request for ADA accommodations nor his return to be *pro se*. Rather the State has a "kill two birds with one stone" approach to Plaintiff free court appointed counsel thereby negating the need of ADA accommodations.

37. Defendant Baddour, in Mr. Fuller's first *pro se* appearance in Superior Court on October 10, 2017, was informed in writing via email that modest ADA Title II accommodations were requested well in advance, yet Defendant Baddour responded with rudeness: chastising Mr. Fuller for contacting him for email.

38. In the first court appearance, Defendant Baddour, the Chief Superior Court Judge, ridiculed Mr. Fuller's communication via email and threatened him with jail for contempt.

39. Defendant Baddour would not permit Mr. Fuller to make any verbal request for ADA Title II accommodations, and treated Mr. Fuller very hardly for what was to be a routine arraignment for a low level misdemeanor. Defendant Baddour mocked Mr. Fuller's slowness in reading the *pro se* representation waiver, and said the court's time was being wasted.

40. Mr. Fuller became extremely distressed and began physically to shake due to the stress of the judge's harsh manner and menacing tone in demanding the *pro se* representation waiver to be signed immediately: a situation that was spinning out of control.

41. An attorney, Don Dickerson, observing the chaotic scene unfold offered, *pro bono*, to help Mr. Fuller understand the *pro se* representation waiver and asked the two men stepped outside. Mr. Fuller signed the form, after Don Dickerson explained it, and returned it to Defendant Baddour.

42. Defendant Baddour refused to accept the signed document from Attorney Dickerson, and ordered Mr. Fuller to return the following day.

9

43. Mr. Fuller then had to arrange accommodations for a second night and suffered extreme emotional distress as to why Defendant Baddour was so angry.

44. On October 11, 2017 Defendant Baddour declared, incorrectly and without any evidence, that Mr. Fuller was indigent, and assigned him counsel, gratis, from the Public Defender's Office. This solution was not acceptable to Mr. Fuller who had already won a related case, *pro se*, in the District Court.

45. On July 20, 2017 a District Court bench trial was held by Defendant Stevens presiding. ADA Title II accommodations were requested by Mr. Fuller in writing well in advance and yet no response was made.

46. Other pre-trail District Court appearances were held by Defendants Cabe and Bryan, and access to the clerk's office, Defendant Stanford. In every instance, ADA Title II accommodations were made by Mr. Fuller in writing well in advance and yet no response was made.

47. It is Plaintiff's wish to continue *pro se* in the Superior Court and not to be represented by court appointed counsel even if they are free.

48. A typical email request is referenced:

**Reasonable accommodations" for a mental disability -- preparations for Court #1 on August 28, 2017**

*Dear Mr. Stanford: I appreciate your help in [resolving] this matter. I get extremely emotional even when discussing the matter. I have the medical records and DSM codes available -- but I would only feel comfortable giving those to board certified psychiatrist for review -- and that such records be sealed. I am particularly upset that I requested ADA accommodations in writing several times to Blake Courlang, James Woodall, UNC attorneys and*

*the presiding Judge Jay Bryan -- no one every responded to the requests. When I went before the "emergency judge" for the District Court Trial, I was extremely agitated at the delay of five hours without any witnesses or explanation and I expressed this frustration in "hyper kinetic activity" (physical movements) and lack of verbal control (impulsive outbursts). It was clear Judge Catherine C. Stevens had not been prepared, as she often chastised me for my physical movements and my difficulty in speaking at the correct time. She thought I was intentionally challenging her authority and became very hostile -- repeatedly threatened to have me jailed for contempt, talking in an abusive tone, and having bailiffs approach me in a menacing manner. Such exacerbates the situation which was one of the most stressful of my entire life. I very much wish to have a calm and peaceful first court appearance, yet I am very anxious. For starters, Courlang has hinted in previous emails that he intends to select the jury the very next day and hold the jury trial the day after the first appearance. This would be impossible, as I would have not time to prepare - and would violate from norms of jury trials. I would appreciate you helping to set the agenda -- I really need structure -- and I want to know what will occur at the first appearance. For example, if Courlang presents affidavits that Judge Stevens intended to find me guilty in case 17-CR050340, I want to produce (and enter into the record) how Stevens was not informed of my ADA needs -- and had neither read the motions or the emails -- the recordings of the*

*trial (in my possession) shows she is very confused about the two counts and has no idea which case is which. At any rate, I want to know if I can submit motions at the first appearance -- will I be presented a new bill of charges -- will there be a probable cause hearing. If the judge could simple present on outline of what would occur -- a diagram -- that would help me. Without such guidance from the Court, I read books and case law and thus create an imaginary vision of the event -- yet I become extremely upset in there is a departure from my expectations. For example, in the District Trial, all the witnesses were legally required to appear at 9am -- that was ordered by the court -- yet just one showed up making me think the case was canceled. Without my knowledge, everyone else had been told the case started at 2pm -- the change in expectation was extremely difficult for me -- it made me extremely angry to switch from my expectation that the case had failed due to failure of witnesses to testify, to the fact that I had been tricked into showing up early for no reason when everyone knew the case would start a 2pm. I must be given very defined organizational structure -- when and event starts and where with expected norms of conduct and possible outcomes with prompt feedback if I behave in a manner that is not pleasing to the Court -- a clear agenda needs to be presented -- this certainty helps me control my range of emotions. If the burden is upon the State -- what is the function of the first appearance from the Defendant's viewpoint? Is it really possible that the entire trial could start the following*

*day without my being able to issue subpoenas -- I can't issue them until I know the trial date. If I am driving up from Wilmington -- I will spend the night -- and please make the judge know that I would like to get a considerable amount of work done. It really makes me angry to come to Hillsborough -- and to be told a continence was needed from the State -- this happened three times -- yet only once did I ask for a continence -- in advance -- and it was not granted. In other words, I will respect the Court -- but only if I am respected -- which has not happened.*

*Sincerely, Napier Fuller*

*PS -- among other reasons I need to know the EXACT TIME of the preceding -- relates to my medicine dosage -- the side effects -- I really need to know when the preceding will start and how long so I can plan for the dosage to reach effectiveness when I begin. For example, if dosage typically lasts 2.0 hours and cannot be taking on an empty stomach and the proceeding starts abruptly at the end of a dosage cycle with no breaks -- what occurred in the District Trial -- then I am basically "off the medication" in the most stressful part of the case. If I get agitated, the judge such simple declare a 15 minute break and let me collect my emotions in the "chill out room" and not to try to bring things to a conflict by threatening to have me jailed or making admonishing comments -- such adds to the conflict. Finally, I do not like to be touched, even shaking hands, and while I wish to sit in a smaller room where I can observe people's expressions better, I am unlikely to*

13

*become violent. at any point Rather, my response in being arrested in this case (the only time I have every been arrested) is atypical and lead to more chaos -- I was handcuffed and touched during the pat down -- this upset me so much, I had trouble speaking and appeared to be in a daze as I was in shock at what was occurring -- my eyes watered -- and I was declared by the arresting officer as being a likely drug abuser -- due to wadded up money in my pockets (I use a money clip) and arrested in addition to the "annoying email charge" -- of a much more serious charge -- Schedule II drug possession -- the drug being one and a half pills that I am prescribed to treat this condition -- that I lawfully possessed in my pocket -- I was taken to jail (my medicine became state's evidence) and I was fingerprinted, mugshots released to press, etc -- the drug charge was much more serious than the email -- I had to spend thousands of dollars and the local DA dropped the case with prejudice quickly -- yet all that came out of the arrest process for the Chapel Hill matter -- hence I am very angry and upset. I would like you to help set a fair playing field here. That's all I ask. Thank you and please provide the judge's feedback ASAP as I need to prepare for the appearance.*

## COUNT I: VIOLATION OF SECTION 504

49. Plaintiff re-alleges and incorporates herein by reference the allegations contained in paragraphs 1-48, above.

50. Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794a, was enacted to eliminate discrimination on the basis of handicap in any program or activity receiving federal financial assistance, 34 C.F.R. §104.2

51. Plaintiff is an otherwise qualified handicapped individual within the meaning of the statute, because his disabilities meet the definition 34 C.F.R. 104.3(j).

52. NCOAC and its employees receive federal funds.

53. Plaintiff was denied access to the court and services on the basis of his disabilities.

54. Defendants intentionally failed to make any accommodations whatsoever under Section 504, in that they were aware of the Plaintiff's disabilities, yet failed to assure accommodation to the courts met his needs which resulted in great hardship and deprivation of civil rights.

55. As a direct and proximate result of Defendants non-compliance with the Section 504, Plaintiff has incurred substantial damages, including, but not limited to severe emotional distress, the expense of prolonging the criminal case from reaching disposition, and needless tort litigation arising from a frivolous decisions to ignore valid requests merely because they came from a "criminal defendant."

56. Plaintiff avers retaliation and vindictiveness in conduct of Defendants. Plaintiff has hours of audio recordings of his court appearances and many emails as evidence for the court to consider.

## COUNT II ADA TITLE II

57. Plaintiff re-alleges and incorporates herein by reference the allegations contained in paragraphs 1-48, above.

58. Plaintiff suffers from two impairments that substantially limit one or more major life activities.

15

59. Defendants decisions to ignore Plaintiff's lawful requests for access to the court *pro se* with "reasonable accommodations" prevents his full participation in the criminal justice system in a meaningful way.

60. Defendants past and current discrimination against Plaintiff is violates Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, and the Federal regulations promulgated pursuant to the Act at 28 C.F.R. Part 35 et seq.

61. As a direct and proximate result of Defendants non-compliance with ADA Title II, Plaintiff has incurred substantial damages, including, but not limited to severe emotional distress, the expense of prolonging the criminal case from reaching disposition, and needless tort litigation arising from a frivolous decisions to ignore valid requests merely because they came from a "criminal defendant."

62. Plaintiff avers retaliation and vindictiveness in conduct of Defendants. Plaintiff has hours of audio recordings of his court appearances and many emails as evidence for the court to consider.

## **PRAYER FOR RELIEF**

63. NOW WHEREFORE, Plaintiff prays the court as follows:

64. That the court grant Plaintiff injunctive relief by requiring Defendants to reinstate him to his former status as *pro se* immediately and to cease retaliation and arbitrary acts and vindictiveness that impede Plaintiff's seeking justice.

65. To restrain Defendants from committing any further unlawful acts that might cause damage to Plaintiff's interest while subject to a criminal prosecution.

66. To order Defendants to make a good faith effort to correct any and all past judicial errors related to Plaintiff by *sua sponte*.

67. That the court grant Plaintiff further injunctive relief by requiring Defendants redress the injuries proximately and directly caused and to prevent the substantial risk of irreparable injury to other persons with mental disabilities that may come before these judges as a result of their unlawful policies, customs, practices, Plaintiff hereby request the following additional relief:

68. The issuance of an Order and Permanent Injunction ("Permanent Injunction") that: (A) appoints an independent monitor (the "Monitor"), to be determined by the Court, who shall oversee certain activities of the Defendants for a period of ten (10) years, and who shall report to the Court on an annual basis regarding Defendants' compliance or non-compliance with the terms of the Permanent Injunction; (B) authorizes the Monitor to establish, review, and enforce all policies applicable to the management of the Orange County Courts and training programs so that ADA Title II compliance will be ensured; (C) provides the Monitor with the authority to hire, fire, and promote all Orange County Court officials, including the Chief Superior Court Justice.

69. That the court grant Plaintiff declaratory relief by making a written finding of facts after review of the evidence that Defendants' conduct violated federal law

70. Any other relief the Court might offer such as nominal damages of $1 from each Defendant.

71. The costs and disbursements of this action be taxed to the Defendants.

Napier Sandford Fuller
*pro se* Plaintiff
2201 Lynnwood Drive
Wilmington NC 28403
Phone: 910.262.2359
provocare@protonmail.ch